UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JANELL ROBINSON,<br>    Petitioner,<br><br>v.<br><br>WARDEN, FCI DANBURY,<br>    Respondent. | No. 3:24-cv-1167 (SRU) |

## RULING ON PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR ENLARGEMENT

On July 8, 2024, petitioner Janell Robinson filed *pro se* a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. Doc. No. 1. Robinson in incarcerated at FCI Danbury. *See Find an Inmate*, Fed. Bureau of Prisons, https://www.bop.gov/inmateloc/ (last visited March 11, 2025). She challenges the Bureau of Prisons' (BOP) calculation of her time credits under the First Step Act ("FSA") and the failure of the BOP to release her pursuant to the Second Chance Act ("SCA"). Pet., Doc. No. 1. On October 23, 2024, respondent Darek Puzio, Acting Warden of FCI Danbury, filed a response asserting that the petition should be denied because Robinson has not demonstrated anything unlawful about her present custody. *See* Response, Doc. No. 10.

On November 26, 2024, counsel was appointed to represent Robinson. Doc. No. 11. On February 12, 2025, counsel filed an emergency motion for enlargement, seeking an enlargement of Robinson's place of custody while her habeas petition is still pending. Doc. No. 15. For the following reasons, Robinson's petition and emergency motion for enlargement are **DENIED**.

### I.    LEGAL STANDARD

A federal prisoner may petition for habeas relief if she is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "A writ of habeas

corpus under § 2241 is available to a federal prisoner who does not challenge the legality of [her] sentence, but challenges instead its execution subsequent to [her] conviction." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Thus, section 2241 petitions are appropriately used to challenge conditions of confinement or sentence calculations. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006); *Dailey v. Pullen*, No. 3:22-cv-1121 (SRU), 2023 WL 3456696, at *2 (D. Conn. May 15, 2023) (considering a challenge to FSA time credit calculation on a section 2241 petition).

A federal court has inherent authority order to enlargement or bail as a provisional remedy in habeas cases, pending adjudication of a petitioner's claims. *Mapp v. Reno*, 241 F.3d 221 (2d Cir. 2001). Enlargement is appropriate "only in unusual cases, or when extraordinary or exceptional circumstances exist which make the grant of bail necessary to make the habeas remedy effective." *Id.* at 226 (quoting *Ostrer v. United States*, 584 F.2d 594, 596 n.1 (2d Cir. 1978)). A petitioner must demonstrate that their habeas petition raises substantial claims and that extraordinary circumstances exist. *Id*.

II.   **BACKGROUND**

Robinson was sentenced in the United States District Court for the District of New Jersey to a term of 108 months' imprisonment, followed by three years of supervised release, after a jury found her guilty of conspiracy to commit mail and wire fraud, wire fraud, and conspiracy to commit extortion. *See* Mot. for Enlargement, Doc. No. 17, at 1-2. Her term of imprisonment was later reduced to 97 months. *Id.*

   A.   First Step Act ("FSA")

The FSA encourages federal inmates to participate in evidence-based recidivism reduction programs ("EBRRs") and other productive activities ("PAs") by providing time credits

to an inmate who successfully participates in such programs. *See* 18 U.S.C. § 3632(d)(4)(A); 28 C.F.R. § 523.40(b); *Dailey*, 2023 WL 3456696, at *2. An inmate's initial risk and needs assessment is ordinarily completed within 28 days of his or her arrival at the designated facility. *See* BOP Program Statement 5410.01, CN-2, § 5.[1] Inmates are reassessed at each regularly scheduled Program Review throughout the remainder of their incarceration. *See id.* Program Reviews occur approximately every 180 days unless an inmate is within one year of release, at which point those reviews occur every 90 days. *See* 28 C.F.R. § 524.11(a)(2). An inmate earns either ten or fifteen days of FSA time credits for every thirty days of successful participation in EBRRs or PAs. 18 U.S.C. § 3632(d)(4)(A).[2]

Prisoners' terms of imprisonment are computed under applicable law. *See* 18 U.S.C. § 3624(g)(1)(C). For inmates who are determined by the BOP to be a minimum or low risk for recidivating, the BOP estimates a conditional projected release date by calculating the maximum number of potential time credits that the inmate may earn during his or her sentence. *See* BOP Program Statement 5410.01, CN-2. However, inmates can benefit from time credits only if they have shown a demonstrated risk reduction or are maintaining a minimum/low risk of recidivism. *See* 18 U.S.C. § 3624(g)(1)(B). In addition, an inmate may accumulate credits every month, but

---

[1] Until recently, BOP policies and forms, including Program Statement 5410.01, were available on the BOP website at https://www.bop.gov/policy/progstat. That content has now been taken down, and the page now displays an error message reading: "Policy and Forms Temporarily Unavailable. This content is temporarily unavailable as we implement the Executive Order on 'Defending Women from Gender Ideology Extremism and Restoring Biological Truth to the Federal Government.'" Program Statement 5410.01 was operative at the time that Robinson's petition was filed, however, and caselaw from around that time confirms its content. *See, e.g., Samoiloff v. Stover*, 733 F. Supp. 3d 68, 70 (D. Conn. 2024).

[2] Eligible inmates who successfully complete EBRRs and PAs earn ten days of time credits for every thirty days of successful participation pursuant to 18 U.S.C. § 3632(d)(4)(A)(i). An eligible inmate who has been determined by the BOP to be a minimum or low risk for recidivating over two consecutive assessments earns fifteen days of time credits for every thirty days of successful participation pursuant to 18 U.S.C. § 3632(d)(4)(A)(ii).

in order to be eligible to have credits *applied*, an inmate must have "earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment." *See* 18 U.S.C. § 3624(g)(1)(A). "In other words, the inmate is not 'eligible' for application of [her] FSA time credits until the number of credits equals the number of days remaining in [her] sentence." *Pujols v. Stover*, 2023 WL 4551423, at *1 (D. Conn. July 14, 2023).

Application of FSA time credits enables an inmate to be transferred to prerelease custody or supervised release earlier than the completion date of her sentence. *See* 18 U.S.C. §§ 3624(g)(2) and (3); 18 U.S.C. § 3632(d)(4)(C); *see also Saleen v. Pullen*, 2023 WL 3603423, at *1 (D. Conn. Apr. 12, 2023) ("Prerelease custody can be in the form of either home confinement or transfer to a residential reentry center."). If the inmate has a term of supervised release imposed as part of their sentence, "the Director of the Bureau of Prisons may transfer the prisoner to begin any such term of supervised release at an earlier date, not to exceed 12 months." *See* 18 U.S.C. § 3624(g)(3).

  B. <u>Second Chance Act</u>

The Second Chance Act provides, in relevant part:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community.

18 U.S.C. § 3624(c)(1). Thus, the BOP has discretion to determine whether a prisoner receives prerelease custody placement and how much time the prisoner receives within the twelve-month maximum period. The BOP is directed to exercise that discretion "in a manner consistent with

4

section 3621(b)," which outlines five factors that the BOP must consider. *See* 18 U.S.C. §§ 3624(c)(6)(A) and 3621(b).[3]

C. <u>Petitioner's Release Date</u>

Robinson's projected release date, with consideration of good conduct time under 18 U.S.C. § 3624(b), is January 9, 2028. *See* FSA Time Credit Assessment, Doc. No. 10-2, at 3. Robinson was eligible to earn FSA credits, and the BOP's FSA Time Credit Assessment showed that she had earned 630 FSA credits as of October 12, 2024. *Id.* at 2.

Under 18 U.S.C. § 3624(g)(3), the BOP may apply 365 days of FSA credits to shorten Robinson's term of imprisonment and begin her term of supervised release at an earlier date. After the BOP applied 365 days of FSA credit, Robinson's projected release date was modified to January 9, 2027. *Id.* at 3. She had 445 remaining FSA credits that could be used toward an early transfer to prerelease custody. *Id*. The BOP also calculated that, if Robinson were to continue accruing the maximum number of additional FSA credits, she would accrue an additional 180 FSA credits, making her conditional date of placement in prerelease custody under the FSA October 21, 2025. *Id.* Finally, the BOP calculated that, applying the default twelve months, or 365 days, of early placement in prerelease custody under the SCA, Robinson's "Conditional Transition to Community Date" was October 21, 2024. *Id.*

---

[3] The five factors the BOP must consider under section 3621(b) are:
    (1) the resources of the facility contemplated;
    (2) the nature and circumstances of the offense;
    (3) the history and characteristics of the prisoner;
    (4) any statement by the court that imposed the sentence--
        (A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or
        (B) recommending a type of penal or correctional facility as appropriate; and
    (5) any pertinent policy statement issued by the Sentencing Commission pursuant to section 994(a)(2) of title 28.
18 U.S.C. § 3621(b).

In October 2024 the BOP conducted the five-factor review required under the SCA, and recommended that Robinson be placed in a residential reentry center (RRC) in Newark, New Jersey on December 10, 2024. *See* Declaration of Mandy Breece, Doc. No. 10-3, at ¶ 14; RRC Referral, Doc. No. 15-1, at ¶ 12. Counsel for Robinson represents that, after their appointment in November 2024, they conferred with counsel for the Government, who informed them that Robinson had been given a placement date of April 24, 2025 at an RRC in Newark, New Jersey. *See* Mot. for Enlargement, Doc. No. 17, at 3-4.

### III.    DISCUSSION

In her petition for a writ of habeas corpus, Robinson states that she is "requesting to have her [Federal Time Credits] awarded to her release date." Doc. No. 1. Nothing in Robinson's petition, however, suggests that the BOP has incorrectly calculated the number of credits she has earned, or is projected to earn, under the FSA, and I do not read her petition as making such an allegation. In fact, the FSA Time Credit Assessment attached to Robinson's petition, dated December 2, 2023, stated that at that time Robinson had earned a total of 465 credits. *See* Doc. No. 1, at 3. Assuming she continued to earn 15 credits per month after that date, the maximum possible, she would earn credits equal to the time left on her sentence about 23 months later, or by approximately the end of October 2025. That calculation comports with the BOP's more recent calculation of Robinson's FSA credits, which projected that Robinson will have earned credits in an amount equal to her remaining term of imprisonment and thus be eligible to apply her credits to be transferred to prerelease custody on October 21, 2025. *See* Doc. No. 10-2, at 2. *See also* Declaration of Mandy Breece, Doc. No. 10-3, at ¶ 11.[4]

---

[4] I note that another FSA Time Credit Assessment worksheet, attached to supplemental letters Robinson filed, docs. no. 7 and 8, and dated September 3, 2024, lists Robinson's FSA conditional placement date as March 25, 2025. *See* Doc. No. 7, at 2; Doc. No. 8, at 3. But, as

6

To the extent that Robinson's petition seeks application of her FSA time credits, her petition is not yet ripe. *See* Doc. No. 1, at 2 ("Petitioner is requesting that she receive her Conditional Projected Release Date . . . and [] be processed for RRC Placement."). The FSA limits the BOP's ability to apply an eligible individual's time credits until the number of time credits equals the amount of time remaining on the individual's sentence. *See* 18 U.S.C. § 3624(g)(1)(A) ("This subsection applies in the case of a prisoner . . . [who] has earned time credits under the risk and needs assessment system . . . in an amount that is equal to the remainder of the prisoner's imposed term of imprisonment. . . . "). *See also Dailey v. Pullen*, 2023 WL 3456696, at *4 (D. Conn. May 15, 2023) (collecting cases). Here, it is undisputed that Robinson has earned a significant number of FSA time credits by participating in BOP programming. The BOP projects that Robinson will be eligible to have those credits applied on October 21, 2025. *See* Doc. No. 10-2, at 2. But because the number of credits she has earned thus far is not equal to the remainder of her imposed term of imprisonment, the relief Robinson seeks is not available under the FSA.

The government acknowledges that, liberally construing Robinson's petition, she appears to seek relief under the Second Chance Act. *See* Doc. No. 10, at 3. *See also* Doc. No. 1, at 2 ("Petitioner is requesting that she receive her . . . 12 months Second Chance Act credit, and [] be processed for RRC Placement."); Doc. No. 8, at 1 ("The BOP [has] done everything it can to reduce my Second Chance Act placement specifically by failing to review me in enough time to receive up to 1 year in halfway house placement specified in the statute."). As explained above, the BOP has recommended that Robinson be transferred to prerelease custody pursuant to

---

Robinson acknowledges, the BOP advised all inmates that the worksheets provided in September 2024 were under revision because the dates included in the "Planning" section were incorrect. *See* Doc. No. 8, at 1.

the SCA, and apparently plans to transfer Robinson to a residential reentry center in Newark, New Jersey on April 24, 2025. *See* Mot. for Enlargement, Doc. No. 17, at 3-4. Accordingly, pursuant to the SCA, Robinson will serve the final approximately six months of her term of imprisonment in prerelease custody. That is obviously less than the twelve months that Robinson was eligible to serve in prerelease custody under the SCA. But the SCA gives the BOP discretion to determine whether a prisoner receives prerelease custody placement, and to determine how much time the prisoner receives within the twelve-month maximum period. *See* 18 U.S.C. §§ 3624(c)(1), (c)(6)(A) and 3621(b). "Indeed, district court within the Second Circuit considering similar claims have uniformly held that decisions regarding pre-release custody [under the SCA] rest within the discretion of the BOP and that they lack authority to order a transfer to pre-release custody." *Bortner v. Stover*, 2024 WL 3595922, at *3 (D. Conn. July 31, 2024) (collecting cases). In fact, Robinson's FSA Time Credit Assessment worksheet explicitly notes that "SCA days are not guaranteed and require an individualized assessment! Therefore, if a default of 365 days is reflected, this date is subject to change based on the required five-factor review under 18 U.S.C. § 3621(b)." Doc. No. 10-2, at 3.

Though Robinson is correct that the BOP has not transferred her to prerelease custody at her earliest date of eligibility under the SCA, she does not yet have an enforceable interest in her transfer. *See Sclafani v. Kane,* 2020 WL 4676414, at *3 (E.D.N.Y. Aug. 12, 2020) ("Although Congress enacted the Second Chance Act to improve prisoner reentry into society and reduce recidivism, . . . the Act did not alter the BOP's discretion and did not give prisoners an enforceable liberty interest in pre-release home confinement."). It is unclear why the BOP first assigned Robinson a transfer date of December 10, 2024, and then later extended that date to April 24, 2025. *See* RRC Referral, Doc. No. 15-1, at ¶ 12; Mot. for Enlargement, Doc. No. 17, at

3-4. Perhaps that delay was on account of bed availability at the Newark RRC, to which Robinson will be transferred. But in any event, Robinson is also not entitled to the relief she seeks under the SCA. I therefore conclude that Robinson is not in custody in violation of the law, and her petition is thus **denied**.

Finally, in her motion for enlargement, Robinson requests enlargement of her place of custody for the period of time between now and her scheduled transfer to prerelease custody, while this Court determines the merits of her habeas petition. Doc. No. 17. However, because I deny her petition, her motion for enlargement is moot.

## IV.    CONCLUSION

For the foregoing reasons, Robinson's petition for a writ of habeas corpus, doc. no. 1, is **denied**. Accordingly, Robinson's motion for enlargement, doc. no. 15, is also **denied**.

Finally, I decline to issue a certificate of appealability, because Robinson has not made a substantial showing of a denial of a federal right. 28 U.S.C. § 2253(c); *Love v. McCray*, 413 F.3d 192, 195 (2d Cir. 2005).

The Clerk is directed to close this case.

So ordered.

Dated at Bridgeport, Connecticut, this 11th day of March 2025.

/s/ STEFAN R. UNDERHILL
Stefan R. Underhill
United States District Judge